# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| JOHN SHOVER, *Plaintiff*, v. REGINA CHESTNUT, ET AL., *Defendants*. | CASE NO. 7:18-cv-00202 <br><br> <u>MEMORANDUM OPINION</u> <br><br> JUDGE NORMAN K. MOON |

Plaintiff John Shover is an inmate at Middle River Regional Jail (MRRJ) with a nerve condition in his legs and feet. Defendants are Regina Chestnut, an officer in charge at MRRJ; Dr. Michael Moran, the jail physician; and Donna Reynolds, head nurse at MRRJ. In a suit brought pursuant to 42 U.S.C. § 1983, Shover alleges that Defendants violated the Eighth Amendment by denying him a cane and a cell on the ground floor, resulting in an injury on the jail stairs. Defendants move for summary judgment, arguing that Shover has not exhausted his administrative remedies as required by § 1997e of the Prison Litigation Reform Act (PLRA). Specifically, Defendants contend that Shover failed to adequately grieve or appeal his placement in a second-tier cell, MRRJ's denial of a cane, and his fall. Shover argues that (1) he did grieve his placement in a second-tier cell and received a favorable response he was not required to appeal; (2) prison officials misled him about his ability to appeal MRRJ's decision ignoring his request for a cane; and (3) he was not required to grieve his fall on the jail stairs.

A reasonable jury could find that Shover exhausted all available administrative procedures with respect to his request to be moved from his second-tier cell. Moreover, a genuine dispute of material fact exists about whether prison officials misrepresented the efficacy of appealing MRRJ's denial of a cane. Finally, the Court finds that Shover was not obligated to grieve his fall. Accordingly, the motion for summary judgment will be denied.

1

## I. LEGAL STANDARD

Fed. R. Civ. P. 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." V*ariety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). The nonmoving party must "show that there is a genuine dispute of material fact for trial . . . by offering sufficient proof in the form of admissible evidence." *Id*. (quoting *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)). The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Id*.

## II. FACTS

Due to "severe nerve damage in his legs," Shover cannot "feel his legs from the knee down to, and including, his feet." (Complaint ¶¶ 9–10). Prior to entering MRRJ, Shover walked with a cane on his doctor's orders. (*Id.*). Upon Shover's intake at MRRJ on July 25, 2016, staff noted Shover's use of a cane and prescription for pain medication related to his nerve condition. (*Id*. ¶¶ 15–18). Shover was not provided a cane and was placed in a cell on the second level of the jail, "which required him to climb stairs multiple times a day." (*Id*. ¶¶ 19–20, 31–32).

Shover submitted at least two "inmate request forms" requesting a cane and a cell on the ground floor. The first, submitted on August 13, 2016, received no response. (Dkt. 12-3 at 2). The second, submitted on August 17, 2017, received a negative response indicating that MRRJ did "not have any bottom bunks available," and that Shover's medical records contained no indicia that he "need[ed] a bottom bunk / tier." (Dkt. 12-3 at 4). On August 25, 2016, Shover

submitted grievance #33840 requesting either a cane or to be moved to the medical infirmary "where I do not have to try and walk unassi[s]ted." (Dkt. 12-3 at 6). Shover stated that he had discussed using a cane with "Dr. Muncey,"[1] who "reaffirmed that canes are not allowed, per MRRJ." (*Id.*). Shover expressed confusion about MRRJ's "cane policy," since he had "personally witnessed an inmate . . . walking with a cane to visitation." (*Id.*). Shover also noted that he had already fallen "several times" on the stairs since being initially denied a cane. (*Id.*).

On August 26, 2016, Defendant Regina Chestnut responded to grievance #33840, indicating that she would "get [Shover] moved to [the] bottom tier so [he didn't] have to go up and down stairs." (*Id.*). Chestnut's response was silent on the subject of a cane. Shover asserts that he did not appeal this decision, in part because he perceived movement to a ground-level cell as a favorable decision not warranting an appeal, and in part because "the officer who delivered the response" allegedly told him that appealing the decision would be "futile because it was the policy of MRRJ not to permit inmates to have canes on account of their potential use as a weapon." (Dkt. 12 at 3).

On September 1, 2016—six days after Chestnut promised to move Shover to the bottom tier—Shover fell on the jail stairs, injuring his back. (Dkt. 12 at 13; dkt. 12-3 at 8–9). Shover was hospitalized for two days. (*Id.*). Upon return to MRRJ, Shover was taken to the medical unit for several days, moved to a cell on the bottom tier, and provided with a cane. (*Id.*). Thereafter, Shover "did not file further grievances about previously being housed in the top tier" and denied a cane before his fall. (Dkt. 12 at 13). Shover now brings suit against Defendants

---

[1] It is not clear who exactly "Dr. Muncey" is but the Court must make all reasonable inferences in Shover's favor as the nonmoving party. *Variety Stores, Inc.*, 888 F.3d at 659. Thus, the Court will infer that "Dr. Muncey" is an MRRJ doctor, since Shover alleges in grievance #33840 that he consulted with "Dr. Muncey" while already incarcerated in MRRJ. (Dkt. 12-3 at 6). It is possible that Shover mistakenly referred to Dr. Moran, a defendant in this case, as "Dr. Muncey" in the text of grievance #33840.

pursuant to 42 U.S.C. § 1983. Shover alleges that Defendants acted with deliberate indifference by denying him a cane and a ground-level cell, violating his Eighth Amendment right to be free from cruel and unusual punishment. (Complaint ¶¶ 56–57).

### III. ADMINISTRATIVE EXHAUSTION REQUIREMENTS

Before addressing whether Shover exhausted all available administrative remedies, the Court first summarizes the PLRA's exhaustion requirements and MRRJ's grievance procedures.

#### A. Section 1997e(a) of the PLRA

Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The grievance procedures in place at the facility housing the prisoner "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). To satisfy § 1997e(a), prisoners must follow each step of the facility's established grievance procedures and meet all deadlines imposed by those procedures before filing suit. *Woodford v. Ngo,* 548 U.S. 81, 90–94 (2006). Failure to exhaust administrative remedies as required under the PLRA is an affirmative defense the defendant has the burden of raising and proving.[2] *See Jones,* 549 U.S. at 211–12; *Wilcox v. Brown*, 877 F.3d 161, 167 (4th Cir. 2017). A prisoner's complaint may be dismissed for non-exhaustion only "in the rare case where failure to exhaust is apparent from the face of the complaint." *Wilcox*, 877 F.3d at 167.

---

[2] Defendants regularly raise PLRA exhaustion as an affirmative defense in summary judgment motions. *See, e.g., Pumphrey v. Coakley*, 684 F. App'x 347, 348–49 (4th Cir. 2017) (reviewing district court's decision granting summary judgment in *Bivens* action on PLRA exhaustion grounds); *Spires v. Harbaugh,* 438 F. App'x 185, 187 (4th Cir. 2011) (vacating summary judgment grant where "genuine issue of material fact" remained about whether prisoner "made sufficient filings to properly exhaust his available administrative remedies").

The PLRA's exhaustion requirement is "mandatory," qualified only by the caveat that administrative remedies must actually be "available" to the inmate. *Ross v. Blake*, 136 S.Ct. 1850, 1856, 1858 (2016). To show that administrative relief was "unavailable," a prisoner must "adduce facts showing that he was prevented, through no fault of his own, from availing himself" of that relief. *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011) (citing *Moore v. Bennette*, 517 F.3d 717 (4th Cir. 2011)). Administrative relief is considered unavailable under four circumstances. First, an administrative procedure is unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross,* 136 S.Ct. at 1859. Second, relief is unavailable where an administrative scheme is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it." *Id*. Third, procedures are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," including by misleading or threatening prisoners "so as to prevent their use of otherwise proper procedures." *Id*. at 1860. Fourth, procedures are unavailable "where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." *Booth v. Churner*, 532 U.S. 731, 736 (2001).

### B. MRRJ's Grievance Procedures

The MRRJ Handbook establishes a three-step grievance process. First, inmates with grievances about "jail policies, procedures, and/or treatment" must "attempt to resolve [their] concern with an officer or staff member prior to submitting a grievance," either through a verbal complaint or by submitting an "inmate request form." (Dkt. 12-1 at 7). Second, if the issue is not resolved through informal means, the inmate can "request a Grievance Form," which prison

5

officials must respond to within nine working days. (*Id*.). Grievances must be submitted "within 30 days of the incident / issue which is the basis for [the] grievance." (*Id*.). Third, if an inmate "disagree[s] with the response" to the grievance, the inmate "may appeal using a Grievance Appeal Form" but must appeal within "2 days after receipt of the grievance response." (*Id*.).

## IV. ANALYSIS

Defendants argue that Shover failed to exhaust all available administrative remedies with respect to his claim that MRRJ placed him in a second-tier cell and then did not move him as promised to a cell on the ground level; that MRRJ ignored his request for a cane; and that both of these defects resulted in an eventual injury on the jail stairs.

### A. Placement in a Second-Tier Cell

Defendants first argue that Shover failed to exhaust his administrative remedies with respect to his placement in a second-tier cell. Specifically, Defendants contend that Shover was required to grieve his placement in a second-tier cell immediately upon being "booked into the jail on July 25, 2016." (Dkt. 13 at 2). Additionally, Defendants contend that Shover was required to appeal Chestnut's response to grievance #33840 promising to move him to the bottom tier because MRRJ did not in fact implement this promise. (Dkt. 13 at 4). Both arguments are unavailing.

Shover was not required by the MRRJ Handbook to submit a formal grievance about his second-tier cell immediately upon intake at MRRJ. The MRRJ Handbook first required Shover to pursue an informal resolution of this issue by, for instance, submitting an inmate request form, a step Shover undertook on August 13, 2016 and August 17, 2016. (Dkt. 12-1 at 7; dkt. 12-3 at 2, 4). Shover's first request form received no response, (dkt. 12-3 at 2), and his second request form received a negative response denying his request to be moved to a cell on the ground level.

6

(Dkt. 12-3 at 4). On August 25, 2016, apparently after "several" falls on the jail stairs, Shover followed the next step in MRRJ's grievance process by filing a formal grievance. (Dkt. 12-3 at 6). In grievance #33840, Shover requested a cane and movement "to the medical infirmary, where I do not have to try and walk unassisted" and where he would not "fall again and injur[e] [himself] on the stairs in the pod."[3] (*Id*.). Grievance #33840 was apparently precipitated by "several" falls Shover experienced after entering MRRJ on July 25, 2016. Shover had only been confined in MRRJ for approximately one month at the point he submitted grievance #33840. Thus, a reasonable jury could find that grievance #33840 complied with the MRRJ Handbook's requirement that grievances be submitted "within 30 calendar days of the incident complained of," and thus could find that Shover's grievance with respect to his second-tier cell was timely. (Dkt. 12-1 at 7). Defendants have not met their burden of establishing otherwise. *See Jones,* 549 U.S. at 211–12; *Wilcox*, 877 F.3d at 167. Accordingly, the Court will not grant summary judgment in Defendants' favor on this point. *Variety Stores, Inc.*, 888 F.3d at 659.

Chestnut responded to grievance #33840 by promising to move Shover to a bottom-tier cell, but MRRJ failed to implement this promise before Shover's fall six days later on the jail stairs. (Dkt. 12-3 at 6). Defendants argue that because MRRJ did not immediately move Shover

---

[3] Although Shover did not explicitly request relocation to a cell on the ground floor in grievance #33840, the Court must make all inferences in Shover's favor as the nonmoving party. *Variety Stores, Inc.*, 888 F.3d at 659. Considered in the light most favorable to Shover, grievance #33840 is fairly interpreted as a request to be moved from his second-tier cell to another location, such as the infirmary, where he would not have to navigate stairs. Indeed, Defendant Chestnut interpreted it as such, responding with a promise to have Shover "moved to the bottom tier so you don't have to go up and down stairs." (Dkt. 12-3 at 6). Moreover, this interpretation comports with the two request forms Shover submitted earlier in August 2016, both of which express concerns about his second-tier placement and the risk of injury posed by navigating stairs. (Dkt. 12-3 at 2, 4). Regardless, to the extent that grievance #33840 is ambiguous, a genuine dispute of material fact exists about whether Shover adequately grieved his placement in a second-tier cell in grievance #33840. Summary judgment may not be granted under such circumstances. *See Variety Stores, Inc.*, 888 F.3d at 659.

to the bottom tier, Shover was required to appeal Chestnut's response. This argument fails. Inmates need not further exhaust administrative procedures upon receiving a favorable response to a complaint. The MRRJ Handbook states that an inmate "may appeal using a Grievance Appeal Form' if he "*disagree[s]* with the response to his grievance," and must do so within "2 days after receipt of the grievance response." (Dkt. 12-1 at 7 (emphasis added)). Here, Shover did not disagree with Chestnut's response to grievance #33840, since Chestnut promised the remedy Shover had requested: movement to another part of the jail not requiring usage of stairs.

Moreover, the Fourth Circuit has held, albeit in an unpublished decision, that inmates need not appeal favorable decisions to properly exhaust administrative remedies under the PLRA. *See Toomer v. BCDC*, 537 F. App'x 204, 206 (4th Cir. 2013) (holding that inmate was "not obligated to pursue an administrative appeal" after "receiving a favorable outcome on the merits of his grievance at a lower step in the process" (citing *Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004))); *Fauntleroy v. Dep't of Corrs.*, No. 3:11-cv-858, 2014 WL 2579988, at *5 (E.D. Va. June 9, 2014) (citing *Toomer* and *Abney* for same principle). Indeed, it would be "counterintuitive to require inmates who win during the grievance process to appeal their victories" based on a projection of "prison officials' hypothetical non-implementation of a favorable" decision. *Abney*, 380 F.3d at 668. "If a prisoner had to grieve non-compliance with favorable decisions under the PLRA, prison officials could keep prisoners out of court indefinitely by saying 'yes' to their grievances and 'no' in practice." *Sulton v. Wright*, 265 F.Supp.2d 292, 298–99 (S.D.N.Y. 2003). Thus, the Court concludes that Shover was not required to appeal Chestnut's favorable response to grievance #33840.

In sum, at least with respect to Shover's request to be moved from his second-tier cell, Defendants have not met their burden of establishing that Shover failed to exhaust all available

administrative remedies as required by the PLRA.

B.  **Shover's Request for a Cane**

Defendants further contend that Shover failed to appeal grievance #33840 with respect to his request for a cane. Shover specifically requested a cane in grievance #33840, and Chestnut's response was silent on this subject, so the response can fairly be characterized as a negative one requiring an appeal under the MRRJ Handbook. (Dkt. 12-1 at 7; dkt. 12-3 at 6). Shover asserts that he did not appeal Chestnut's decision ignoring his request for a cane because on two occasions, prison officials told him that MRRJ does not permit canes. First, Shover alleges in grievance #33840 that he had consulted the previous day with "Dr. Muncey," who "reaffirmed that canes are not allowed, per MRRJ." (Dkt. 12-3 at 6). Second, Shover alleges in a sworn declaration that "the officer who delivered the response" to grievance #33840 told him that "appealing the decision . . . was futile because it was the policy of MRRJ not to permit inmates to have canes on account of their potential use as a weapon." (Dkt. 12 at 3; dkt. 12-2 at 3–4).[4] These factual allegations raise the question whether further administrative relief (*i.e.*, an appeal of Chestnut's reply ignoring Shover's request for a cane) was truly available to Shover.

Administrative remedies are not considered "available" under the PLRA where prison officials' misrepresentations or misleading statements prevent an inmate from pursuing further administrative relief. *See Ross*, 136 S.Ct. at 1860. *See also Townsend v. Murphy,* 898 F.3d 780,

---

[4] Defendants argue that Shover was required to grieve MRRJ's initial denial of a cane during Shover's intake at MRRJ on July 25, 2016, at which point Shover alleges he was denied a cane. (Dkt. 13 at 2). Grievance #33840 was filed on August 25, 2016, 31 days after this initial denial of a cane. Thus, under Defendants' argument, grievance #33840 would be untimely under the MRRJ Handbook's 30-day deadline. However, grievance #33840 states that Shover had "since fallen several times because I don't have my cane." (Dkt. 12-3 at 6). Thus, Defendants are wrong to characterize grievance #33840 as an untimely grievance of MRRJ's denial of a cane upon Shover's initial intake at MRRJ. Rather, grievance #33840 concerned the subsequent need for a cane after "several" falls resulting from this initial denial. Indeed, Defendants concede that grievance #33840 "arguably started the clock again as to exhaustion." (Dkt. 13 at 2).

9

783–84 (8th Cir. 2018) (reversing decision granting summary judgment on exhaustion grounds where prisoner alleged that prison official "misled him by advising him not to file a formal grievance"); *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) ("Administrative remedies are not 'available' if prison officials 'interfere[] with an inmate's pursuit of relief' by misleading him to think that he has done everything necessary to initiate the grievance process." (citing *Ross*, 136 S.Ct. at 1860, n.3)).

Here, Defendants have not responded to Shover's factual allegation that Dr. Muncey told him MRRJ never provided canes. Defendants have remained similarly silent on Shover's allegation that the officer who delivered Chestnut's response to grievance #33840 stated that appealing the order would be futile given MRRJ's no-cane policy. However, Defendants still maintain that Shover should have appealed Chestnut's failure to address Shover's request for a cane in her response to grievance #33840, and that such an appeal was "available" to Shover. (Dkt. 13 at 3). Shover disagrees, and asserts in a sworn declaration that prison officials' misleading statements kept him from filing a timely appeal. (Dkt. 12-2 at 3–4). Thus, a genuine dispute of material fact exists about whether prison officials misrepresented MRRJ's cane policy and the efficacy of an appeal, and, by extension, whether further administrative remedies were "available" to Shover under the PLRA. Moreover, because Defendants did not respond to Shover's allegations about Dr. Muncey and the unnamed officer's misleading remarks, Defendants fail to meet their burden of establishing non-exhaustion as an affirmative defense. *See Bock*, 549 U.S. at 211–12; *Wilcox*, 877 F.3d at 167.

In sum, at least as it pertains to MRRJ's denial of Shover's request for a cane, the motion for summary judgment will be denied.

### C. Lack of Post-Fall Grievance

Defendants' final argument is that following Shover's September 1, 2016 fall and subsequent hospitalization, Shover failed to grieve either the fall itself or MRRJ's failure to move him to a bottom-tier cell and provide a cane prior to the fall. (Dkt. 13 at 4). Exhaustion is not required under the PLRA "where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." *Booth*, 532 U.S. at 736. This is so because "[w]ithout the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust." *Id*. at 736, n.4. Here, MRRJ's grievance procedures offered no realistic prospect for redress after Shover had already fallen. Submitting a grievance after the September 1, 2016 fall had already taken place would not have redressed Shover's complaints that previous denials of bottom-tier housing and a cane placed him at risk of falling. (Dkt. 12 at 23). Moreover, it is unclear what relief Shover could have requested in a post-fall grievance since MRRJ provided the remedy Shover had requested all along within 30 days of the fall by providing him a cane and moving him to a bottom-tier cell. (Dkt. 12 at 13). Thus, the Court finds Shover was under no obligation to grieve his September 1, 2016 fall before filing suit. Accordingly, Defendants' final argument that Shover failed to exhaust his administrative remedies under the PLRA fails.

### V. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment for failure to exhaust administrative remedies will be denied. An accompanying order will issue.

Entered this  18th   day of December, 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE